# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT COURT OF KANSAS

| | |
|---|---|
| **CYNTHIA BROWN-BROILS,** | ) |
| and | ) |
| **DIONNA WEBB,** | ) |
|     Plaintiffs, | ) |
| v. | )   Case No.   06-2235-JWL |
| **UNIVERSITY OF KANSAS HOSPITAL AUTHORITY,** | ) |
| SERVE:   Irene Cumming, CEO<br>           2001 Murphy Bldg<br>           Mail Stop 2013<br>           3901 Rainbow Blvd.<br>           Kansas City, KS 66160 | ) |
| and | ) |
| **KANSAS UNIVERSITY PHYSICIANS, INC.** | ) |
| SERVE:   Registered Agent<br>           Kansas, LTD<br>           10851 Mastin Blvd., Suite 1000<br>           Overland Park, KS 66210 | ) |
|     Defendants. | ) |

## COMPLAINT

Plaintiffs Cynthia Brown-Broils and Dionna Webb, for their causes of action against defendants University of Kansas Hospital Authority ("UKHA") and Kansas Univerisity Physicians, Inc., ("KUPI") state and allege as follows:

    1.    Plaintiff Cynthia Brown-Broils is an African-American female who is a resident of Kansas City, Wyandotte County, Kansas.

    2.    Plaintiff Dionna Webb is an African-American female who is a resident of Kansas City, Wyandotte County, Kansas.

3. Defendant UKHA is a state agency created under K.S.A. § 76-3301, *et seq.* with the authority over and responsibility for operations of the University of Kansas Medical Center ("KUMC"), and may be served through its above named agent.

4. Defendant KUPI is a not-for-profit corporation existing under the laws of the State of Kansas, which provided staffing to KUMC under a contract between defendants UKHA and KUPI, and may be served through its above named agent.

5. This case arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Title VII), and 42 U.S.C. § 1983, making jurisdiction appropriate in this Court.

6. At all times relevant to this action, defendants UKHA and KUPI employed 15 or more employees.

7. Since the claims made herein arose out of the same series of transactions or occurrences and several questions of law or fact common to both plaintiffs will arise in this action, the joinder of plaintiffs Brown-Broils and Webb in this action is proper pursuant to Fed.R.Civ.P. 20(a).

8. Plaintiffs were employed in this judicial district, the alleged unlawful employment actions occurred in this district, and the relevant employment records are located in this district, making venue proper in this Court pursuant to 42 U.S.C. § 2000e-5.

9. Plaintiff Brown-Broils filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the unlawful employment practices complained of herein such that this action is timely and properly filed pursuant to 42 U.S.C. § 2000e-5(e)(1).

10. Plaintiff Webb filed a charge of discrimination with the Equal Employment

Opportunity Commission (EEOC) within 180 days of the unlawful employment practices complained of herein such that this action is timely and properly filed pursuant to 42 U.S.C. § 2000e-5(e)(1).

11. Plaintiff Brown-Broils received a Notice of Right to Sue from the EEOC and this action is timely filed within 90 days from the receipt of such notice.

12. Plaintiff Webb received a Notice of Right to Sue from the EEOC and this action is timely filed within 90 days from the receipt of such notice.

13. On or about July 1, 2004, Chet Johnson ("Dr. Johnson") (Caucasian male) became the Chair of the Pediatrics Department ("Chair of Pediatrics") at KUMC.

14. Dr. Johnson was preceded as Chair of Pediatrics by Dr. Robert Trueworthy, M.D. ("Dr. Trueworthy"), who served as Chair of Pediatrics during the initial time period relevant to this action up through approximately July 1, 2004.

15. The Chair of Pediatrics had authority in regard to personnel decisions, which included employees of defendants UKHA and KUPI in the Pediatrics Department, and further participated in hiring, promotion, transfer, disciplinary, and termination decisions of such employees.

16. Employees of defendant KUPI reported to defendant UKHA and to the Chair of Pediatrics, and were subject to their authority as well as their customs and policies.

17. Upon Dr. Johnson taking over as Chair of Pediatrics in July 2004, several long-term African-American or minority employees were terminated, discharged, or otherwise harassed and discriminated against because of their race.

18. On or about November 1, 2004, Dr. Johnson appointed Mary Lee Shucart (Caucasian), an employee of defendant KUPI, to be the Administrator of the Pediatrics

Department ("Administrator of Pediatrics").

19. Ms. Shucart reported to Dr. Johnson.

20. Ms. Shucart replaced Linda Schuck (Caucasian female), who served as Administrator of Pediatrics during the initial time period relevant to this action up through approximately July 1, 2004.

21. Prior to November 2004, plaintiff Webb reported to Ms. Schuck.

22. Ms. Schuck reported to the Chair of Pediatrics; initially Dr. Trueworthy, then Dr. Johnson.

23. KUMC's Pediatrics Department was made up of approximately ten (10) medical specialty divisions – *e.g.* Cardiology, Hemotology/Oncology, Ambulatory, Rheumatology – and additionally had a division devoted to scheduling ("Scheduling Division").

24. The Scheduling Division was made up of scheduling clerks and a Scheduling Supervisor ("Supervisor of the Scheduling Division").

25. Each medical specialty division had one or more administrative assistants and/or administrative specialists.

26. On or about January 1, 2005, Chris Puhr (Causasian female), an employee of defendant KUPI and part of the Scheduling Division, was promoted from a scheduling clerk to Supervisor of the Scheduling Division.

27. In or around January 2005, defendants created an additional scheduling supervisor position ("Scheduling Supervisor") to supervise the administrative assistants and administrative specialists in the medical specialty divisions of the Pediatrics Department.

28. Dr. Johnson promoted Leslie Russell (Caucasian female), an employee of defendant KUPI, from an administrative specialist position to the newly added Scheduling

Supervisor position, even though Ms. Russell was less experienced and less qualified than similarly situated minority employees, including plaintiff Webb.

29. The open position into which Ms. Russell was promoted was neither posted nor announced to other employees, and no application process was conducted where by more experienced and more qualified African-American candidates, such as plaintiff Webb, could apply.

30. On or about November 1, 2004, plaintiff Webb began reporting directly to Mary Lee Shucart. On or about January 1, 2005, after Ms. Russell was given the Scheduling Supervisor position, plaintiff began reporting directly to Ms. Russell.

31. Ms. Russell and Ms. Puhr reported to Ms. Shucart.

32. Ms. Shucart reported to Dr. Johnson.

33. White employees were treated more favorably than plaintiffs Brown-Broils and Webb in regard to discipline and performance procedures.

34. Ms. Puhr, while working as a scheduling clerk along side plaintiff Brown-Broils, missed intake data and received numerous complaints from all sections within the Pediatrics Department, however, Ms. Puhr was neither disciplined nor terminated for her conduct, and was even promoted to Supervisor of the Scheduling Division.

35. Sharon Meesa (Caucasian female) worked in the same area as plaintiff Brown-Broils and shared the same or substantially similar responsibilities and duties as plaintiff Brown-Broils. Ms. Meesa, however, was hired as a temporary employee in 2004 and did not become became permanent until January 2005. Ms. Meesa missed intake data and received complaints from numerous sections within the Pediatrics Department, however she was neither disciplined nor terminated for her conduct.

36. Joyce Woolridge (African-American female), former Residency Coordinator in the Pediatrics Department, was subjected to discriminatory treatment from Ms. Schuck, forcing Ms. Woolridge to resign in or around December 2003.

37. Defendants UKHA and KUPI did not properly train employees in the Pediatrics Department in regard to workplace discrimination such that defendants were deliberately indifferent to the risk of harm to persons or employees caused by such lack of training.

### COUNT I – PLAINTIFF BROWN-BROILS CLAIM UNDER TITLE VII AGAINST DEFENDANTS UKHA AND KUPI

38. Plaintiff Brown-Broils restates, realleges, and incorporates by reference paragraphs 1 through 37 set forth above the Complaint.

39. Plaintiff Brown-Broils was an employee of KUPI and/or KUMC, now defendant UKHA, for more than twenty-three (23) years, and during such tenure performed her job well and satisfactorily met the legitimate job expectations of her employers.

40. Plaintiff Brown-Broils was an employee of KUMC, now defendant UKHA, from 1975 to 1980, and again from 1985 to 1996, at which time she was employed by defendant KUPI through the time of her termination on or about August 29, 2005.

41. In or around 1996, defendant KUPI began assisting defendant UKHA with staffing operations, and by reason of their contractual arrangement, defendant KUPI technically became plaintiff Brown-Broils' employer in or around May 1996, and continued as her employer through the duration of her employment with defendants. Such change in corporate-structure, however, had no resulting impact on plaintiff Brown-Broils' position, responsibilities, or duties.

42. Although defendant KUPI was plaintiff Brown-Broils' employer from approximately May 1996 through her termination on or about August 29, 2005, plaintiff Brown-

Broils reported to and was subject to direct supervision by employees of both defendants UKHA and KUPI.

43. Plaintiff Brown-Broils reported to Ms. Puhr and Ms. Shucart.

44. Throughout her employment with defendant KUPI, plaintiff Brown-Broils held the position of scheduling clerk in the Scheduling Division of the Pediatrics Department.

45. On March 25, 2005, Ms. Shucart placed plaintiff Brown-Broils on a corrective action plan for certain errors commonly committed by other employees due to the high-pressure environment.

46. Contrary to defendant's policy, plaintiff Brown-Broils never received a "verbal warning" prior to receiving a "written warning" on March 25, 2005 which accused plaintiff Brown-Broils of not performing her job correctly.

47. Plaintiff Brown-Broils was the only scheduling clerk placed on a corrective action plan during the period of time relevant to plaintiffs' claims.

48. After a meeting on March 25, 2005 wherein plaintiff Brown-Broils was given a disciplinary counseling from Ms. Puhr and Ms. Shucart, plaintiff Brown-Broils asked Ms. Puhr for an updated company manual so plaintiff Brown-Broils could improve upon her alleged deficiencies, deficiencies which had never before been called to plaintiff Brown-Broils' attention in the numerous years of her employment with defendants UKHA and KUPI.

49. Plaintiff Brown-Broils further asked for re-training based on Ms. Puhr's and Ms. Shucart's determination that plaintiff Brown-Broils did not know how to perform her job duties, duties plaintiff Brown-Broils had been performing for years.

50. Ms. Puhr and Ms. Shucart refused to provide either a manual or re-training, and further responded that plaintiff Brown-Broils had been an employee there long enough and did

not require re-training.

51. Plaintiff Brown-Broils was terminated on August 29, 2005.

52. When plaintiff Brown-Broils learned of her termination, Ms. Shucart told her that she did not want to discuss it and provided no rationale for the termination, and added that plaintiff Brown-Broils should just collect her things and get out.

53. But for plaintiff Brown-Broils' race, she would not have been terminated.

54. As a direct and proximate result of defendants' unlawful termination of plaintiff Brown-Broils, plaintiff Brown-Broils has sustained damages in the form of lost salary and emotional pain, suffering, inconvenience, loss of enjoyment of life and mental anguish.

WHEREFORE, plaintiff Brown-Broils prays for judgment against defendants UKHA and KUPI under Count I as follows:

   a. for an award of lost salary;
   b. for an award of compensatory damages in an amount deemed reasonable by the court;
   c. for plaintiff's attorney's fees and costs incurred herein; and

for such other relief as this Court deems just and proper.

## COUNT II – PLAINTIFF WEBB'S CLAIM UNDER TITLE VII AGAINST DEFENDANTS UKHA AND KUPI

55. Plaintiff Webb restates, realleges, and incorporates by reference paragraphs 1 through 54 set forth above in the Complaint.

56. Plaintiff Webb performed up to defendants' expectations throughout her more than 17 years of employment, and did not begin receiving disciplinary notices until the year preceding her discharge.

57. Plaintiff Webb, an administrative specialist in the Pediatrics Department, was an employee of defendant UKHA, however plaintiff Webb reported to and was subject to direct supervision by employees of both defendants UKHA and KUPI.

58. Plaintiff Webb reported to Ms. Russell following Ms. Russell's promotion to Scheduling Supervisor on or about January 1, 2005.

59. Almost immediately upon Ms. Russell becoming Scheduling Supervisor, Ms. Russell began disciplining plaintiff Webb or otherwise treating plaintiff Webb less favorably than similarly situated white employees. The first disciplinary action Ms. Russell took against plaintiff Webb was based upon plaintiff Webb having "Looney Tunes" stuffed animals around her workspace, placed there by plaintiff Webb to provide comfort for the numerous children who visited the hospital.

60. Plaintiff Webb next received a disciplinary notice from Ms. Russell stemming from a verbal confrontation between plaintiff Webb and Ms. Russell. Plaintiff Webb intended to appeal the disciplinary action pursuant to defendant UKHA's policies, however, the Director of Human Resources, Rick Robards, dissuaded plaintiff Webb from doing so and instead suggested to plaintiff Webb that informally addressing the issue with Ms. Russell, rather than taking action pursuant to defendant UKHA's established policies, would be the better way to handle the situation.

61. On March 22, 2005, plaintiff Webb was put on a special evaluation status to last from March 22, 2005 through June 22, 2005. Plaintiff Webb refused to sign such disciplinary action, and appealed her disciplinary evaluation status.

62. A letter to plaintiff Webb dated August 22, 2005 from the Director of Human Resources, a letter plaintiff Webb did not see until months following her constructive discharge,

9

indicated that Human Resources had proposed to terminate plaintiff Webb and that plaintiff Webb could attempt to dispute such termination proposal by responding to Human Resources by August 26, 2005.

63. A letter to plaintiff Webb dated August 26, 2005 from the Director of Human Resources indicated that defendant UKHA had determined to terminate plaintiff Webb effective August 27, 2005.

64. Due to the repeated discipline and harassment directed specifically toward plaintiff Webb by her supervisors, the resulting humiliation from such treatment, and the lack of assistance from Human Resources in response to plaintiff Webb's disagreement with her disciplinary treatment, plaintiff's working conditions were made so difficult and intolerable that she had no other choice but to resign. In addition, plaintiff Webb was informed on August 26, 2005 that she would be terminated on August 27, 2005. Based on the stigma associated with being terminated and the impact on future employment opportunities, plaintiff Webb was left with no choice but to resign on August 27, 2005 in lieu of her imminent termination.

65. Plaintiff Webb was replaced by Delores Hancock (white female), an employee who, prior to replacing plaintiff Webb, had performance issues while working in the Rheumatology division of the Pediatrics Department.

66. But for plaintiff Webb's race, she would not have been constructively discharged.

67. As a direct and proximate result of defendants' unlawful practices, plaintiff Webb has sustained damages in the form of lost salary and emotional pain, suffering, inconvenience, loss of enjoyment of life and mental anguish.

WHEREFORE, plaintiff Webb prays for judgment against defendants UKHA and KUPI under Count II as follows:

    a. for an award of lost salary;

    b. for an award of compensatory damages in an amount deemed reasonable by the court;

    c. for plaintiffs attorney's fees and costs incurred herein; and

for such other relief as this Court deems just and proper.

### COUNT III – PLAINTIFF BROWN-BROILS' CLAIM UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT UKHA

68. Plaintiff Brown-Broils restates, realleges, and incorporates by reference paragraphs 1 through 67 set forth above in the Complaint.

69. There was a custom or common practice within defendant UKHA of permitting supervisors to discriminate against employees on the basis of race or national origin, evidencing defendant UKHA's reckless disregard for the rights of other persons and employees.

70. The violations were committed by supervisors acting pursuant to defendant UKHA's policy or custom of discrimination in the workplace.

71. Plaintiff Brown-Broils' termination was based upon such supervisors' adherence to defendant UKHA's policy or custom of discrimination in the workplace.

72. Defendant UKHA was aware of the repeated instances of discrimination by supervisors against employees but failed to act based on its deliberate indifference to the violations of its employees' rights.

73. Defendant UKHA failed to adequately train its employees on unlawful discriminatory practices in the workplace, and such failure represented a deliberate indifference to the rights of others.

74. As a direct and proximate result of the unlawful practices of defendant UKHA,

plaintiff has sustained damages in the form of lost salary and emotional pain, suffering, inconvenience, loss of enjoyment of life and mental anguish.

75. Defendant UKHA's unlawful treatment of plaintiff Brown-Broils was based on its reckless or callous indifference to plaintiff's federally protected rights such that an award of punitive damages is proper.

WHEREFORE, plaintiff Brown-Broils prays for judgment against defendant UKHA under Count III as follows:

      a. for an award of lost salary;

      b. for an award of compensatory damages in an amount deemed reasonable by the court;

      c. for an award of punitive damages sufficient to punish defendants and to deter defendants and others from similar conduct in the future;

      d. for plaintiffs attorney's fees and costs incurred herein; and

for such other relief as this Court deems just and proper.

### COUNT IV – PLAINTIFF WEBB'S CLAIM UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT UKHA

76. Plaintiff Webb restates, realleges, and incorporates by reference paragraphs 1 through 75 set forth above in the Complaint.

77. Plaintiff Webb's termination was based upon such supervisors' adherence to defendant UKHA's policy or custom of discrimination in the workplace.

78. As a direct and proximate result of the unlawful practices of defendant UKHA, plaintiff Webb has sustained damages in the form of lost salary and emotional pain, suffering, inconvenience, loss of enjoyment of life and mental anguish.

79. Defendant UKHA's unlawful treatment of plaintiff Webb was based on its reckless or callous indifference to plaintiff's federally protected rights such that an award of punitive damages is proper.

WHEREFORE, plaintiff Webb prays for judgment against defendant UKHA on Count IV as follows:

    a. for an award of lost salary;

    b. for an award of compensatory damages in an amount deemed reasonable by the court;

    c. for an award of punitive damages sufficient to punish defendants and to deter defendants and others from similar conduct in the future;

    d. for plaintiffs attorney's fees and costs incurred herein; and

for such other relief as this Court deems just and proper.

**THE MEYERS LAW FIRM, LC**

By: /s/ Brian D. DeFrain
Martin M. Meyers   KS #14416
*Mmeyers@meyerslaw.com*
Brian D. DeFrain   KS #22260
*Bdefrain@meyerslaw.com*
222 W. Gregory Blvd.
Suite 340
Kansas City, Missouri   64114
(816) 444-8500
(816) 444-8508 *facsimile*

ATTORNEYS FOR PLAINTIFF

Plaintiff designates Kansas City, KS as place of trial.